## AMERICAN SURETY CO. OF NEW YORK v. FIRST NAT. BANK IN WEST UNION.

### No. 12–F.

District Court, N. D. West Virginia.

Oct. 26, 1944.

356

Walter Higgins, of New York City, and Robert R. Wilson, of Clarksburg, W. Va., for plaintiff.

Samuel A. Powell, of Harrisville, W. Va., for defendant.

HARRY E. WATKINS, District Judge.

The Circuit Court of Appeals of the Fourth Circuit has held the defendant bank liable to the plaintiff surety company for $4,050 paid by the surety company on account of funds of a bankrupt estate misappropriated by a trustee in bankruptcy. American Surety Co. of New York v. First Nat. Bank in West Union, W. Va., 141 F.2d 411, 413. The case was remanded to this court for further proceedings in accordance with that opinion.

The opinion makes it clear that the bank's liability is based on the theory of a constructive trust; that it is liable as a constructive trustee for money of the estate which it received and which was converted. This relation of constructive trustee is created because of the bank's participation in the breach of trust in wrongfully permitting the trustee to deposit such funds in a bank which it knew was forbidden by the terms of the trust to receive such funds.

Plaintiff claims interest on the sum of $4,050 from April 26, 1938, the date it made payment of this amount to the successor trustee. Defendant says that interest should run only from date of the judgment against it in this court.

In order to decide this question of interest it is important to look to the opinion of the Circuit Court of Appeals to understand the nature of the bank's liability. The court said:

"The judge below was of opinion that there was no liability on the part of the bank either with respect to the checks cashed or those deposited in the personal account of the trustee, on the theory that, under the law as declared by the courts of West Virginia, it was essential to liability on the part of the bank that it should have participated in the misappropriation or with knowledge reaped some benefit therefrom, and that there was no evidence of such participation or benefit. The decision was based upon the decisions of the Supreme Court of Appeals of West Virginia in United States Fidelity & Guaranty Co. v. Home Bank, 77 W.Va. 665, 88 S.E. 109, and United States Fidelity & Guaranty Co. v. Hood, 122 W.Va. 157, 7 S.E.2d 872.

"We would be in accord with the conclusions reached by the court below if the only principles here applicable were those controlling in the case of deposit and withdrawal of funds by an ordinary fiduciary, where nothing in the law forbids the deposit of the trust funds in the personal account of the trustee or in the bank in which the deposit is made. See our decision in Bank of Vass v. Arkenburgh, 4 Cir., 55 F.2d 130, and cases there cited. In such case the deposit does not of itself constitute a breach of trust on the part of the trustee of which the bank

has notice. In the case of the deposit here involved, however, we think it clear that the deposit itself constituted a breach of trust on the part of the trustee of which the bank had ample notice, and that, upon the receipt of the deposit under such circumstances, the bank became a trustee ex maleficio of the amount so received and liable therefor as a trustee to the estate of the bankrupt. The rule applicable is that stated in A. L. I. Restatement of the Law of Trusts, sec. 324, Comment b, as follows:

"'If a trustee commits a breach of trust in depositing trust funds in a bank and the bank when it receives the funds has notice of the breach of trust, the bank is liable for participation in the breach of trust, and is chargeable as a constructive trustee of the funds.

"'Thus, if a bank receives on deposit funds which it knows are trust funds and which it knows that the trustee is forbidden by the terms of the trust to deposit in the bank, it is liable for participation in the breach of trust, and is chargeable as a constructive trustee of the funds deposited.'"

\*     \*     \*     \*     \*

"It is clear, we think, that, if the funds received by the bank can be held subject to a constructive trust, the bank itself must be held liable for the funds as a constructive trustee thereof. As said in Glasgow v. Nicholls, 124 Wash. 281, 214 P. 165, 168, 35 A.L.R. 419, quoted with approval in Fidelity & Deposit Co. v. People's Bank, supra (44 F.2d [19, at page] 21): 'A trustee de son tort does not escape liability to his cestui que trust by showing that he has disposed of the property, the subject of the trust. It may be that such disposition has placed the property in the hands of a bona fide purchaser for value, without notice, and the cestui cannot impress the trust upon the property in the hands of the ultimate holder of it; but, at the same time, the trustee de son tort is personally liable for the value of the property of the cestui which he has had in his possession, for he has converted the trust property, and although the cestui may not be able to follow the specific property and impress a trust upon it, he is nevertheless entitled to a judgment against the wrongdoing trustee.'"

▮▮▮▮ As such constructive trustee the bank should not only account to the surety company for the amount of $4,050 which the surety company paid on April 26, 1938, but is liable for interest on that amount from date of payment.

The applicable rule is given in A. L. I. Restatement of the Law of Restitution, § 156, as follows: "Subject to the rules stated in sec. 157, a person who has a duty to pay the value of a benefit which he has received, is also under a duty to pay interest upon such value from the time he committed a breach of duty in failing to make restitution if, and only if: (a) the benefit consisted of a definite sum of money, or (b) the value of the benefit can be ascertained by mathematical calculation from the terms of an agreement between the parties or by established market prices, or (c) payment of interest is required to avoid injustice."

Under the doctrine of a constructive trust, the defendant is held liable as though it still held this money for the benefit of the plaintiff, assignee of the bankruptcy estate. Thereby, the defendant has received a benefit which, in contemplation of law, it still retains, and for which it must make restitution, even though it has converted the money received.

Plaintiff is entitled to interest from the time the bank committed a breach of duty in failing to make restitution. Where there has been a conversion by the recipient, although entirely innocent, there is a breach of duty at the time of the conversion. The rule as to the time when such breach of duty occurs is stated in A. L. I. Restatement of Law of Restitution, § 156, Comment a, as follows:

"a. Breach of duty. Before the time when the recipient of a benefit has been tortious or otherwise at fault normally he is liable only to the extent that he has benefited from the use of what he has received \* \* \*".

"A person does not necessarily commit a breach of duty to make restitution by being in possession of things to which another is entitled, or by having received a benefit for which he should pay. Thus where he receives property from another because of a mistake of the other or where he is the beneficiary of the payment of a debt by the other of which he does not know, he does not commit a breach of duty to make compensation therefor. Where restitution is due because of the rescission of a transaction for fraud or duress, there is a breach of the duty of

restitution at the time of the transaction; where it is rescinded for mistake, there is a breach of duty upon notice of the facts (see sec. 63); where there has been a conversion, innocent or otherwise, by the recipient, there is a breach of duty at the time of the conversion (see sec. 128) although interest may be computed from a later time (see Comment e on sec. 157); in other situations normally there is no breach of duty until the recipient has notice of the facts because of which the duty exists." (Comment e on sec. 157 relates to cases where the subject matter increases in value after the conversion, and damages are allowed for the increased value, in which event it would not be just to allow interest on this increased value from date of conversion).

■ In sec. 157, Comment e, the same author says: "In actions for restitution brought because of the conversion of chattels, the measure of restitution is the value of the chattels, together with, ordinarily, interest from the time of the conversion". To same effect see 65 C.J. p. 141, Trover and Conversion, §§ 254–255, citing in note 44, the case of Pittsburgh & W. Va. Gas Co. v. Pentress Gas Co., 84 W. Va. 449, 100 S.E. 296, 7 A.L.R. 901. See also Cranmer et al. v. McSwords et al., 26 W. Va. 412. See also 96 A.L.R. pp. 74–109, and West Virginia cases there cited, including Pine & Cypress Mfg. Co. v. American Eng. & C. Co., 97 W.Va. 471, 125 S.E. 375. In the latter case the defendant unloaded and took possession of lumber without authority of owner and for three months treated it as its own property. Point 3 of the syllabus is as follows: "Any distinct act of dominion wrongfully exerted over the property of another, and in denial of his rights, or inconsistent therewith, may be treated as a 'conversion,' and it is not necessary that the wrongdoer apply the property to his own use. And when such conversion is proved the plaintiff is entitled to recover irrespective of good or bad faith, care or negligence, knowledge or ignorance." The defendant was held liable in an action of assumpsit for the market value of the lumber at the time of the conversion, together with interest thereon from said time. See also Ferguson v. Union Nat. Bank of Clarksburg, W. Va., 4 Cir., 126 F.2d 753.

Furthermore, I see no merit in the bank's claim that the amount of the benefit received did not consist of a definite amount of money within the rule stated above. In wrongfully receiving the sum of $4,050 it then and there became chargeable as a constructive trustee of a definite amount of money.

■ After the decision in the Court of Appeals, defendant moved for leave to file an amended and supplemental answer under Rule 15(a) and (d), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. In this new pleading it is asserted that this action is barred by the limitation prescribed by the Bankruptcy Act, 11 U.S.C.A. § 29, sub. d, "in force at the time plaintiff's cause of action arose, and which provided that 'Suits shall not be brought by or against a trustee of a bankrupt estate subsequent to two years after the estate has been closed', and as amended by the Chandler Act so as to read 'Suits shall not be brought against a person who has acted as a receiver or trustee of a bankrupt estate, upon any matter arising in connection with the administration thereof, subsequent to two years after the estate has been closed' ". Plaintiff objected to the filing of this new pleading. I am of the opinion that such objection should be sustained for the following reasons:

1. The supplemental pleading does not set forth "transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented" within the meaning of Rule 15(d) of Federal Rules of Civil Procedure.

2. If such motion is made under Rule 15(a) of the Federal Rules of Civil Procedure, such motion comes too late, and under all the circumstances of the case should be denied.

3. If defendant relies upon the West Virginia statute of limitations, as indicated in the second paragraph on page 17 of its brief, such matter is res adjudicata. The defendant pleaded the West Virginia statute of limitations as its first defense in its original answer. This defense was decided adversely to the defendant and no appeal taken to the ruling of the court on this question.

4. The supplemental pleading does not state a good defense. Neither Section 11, sub. d, 11 U.S.C.A., Section 29, sub. d, Bankruptcy Act, nor the same section as amended by the Chandler Act (September 22, 1938) is applicable to the facts in this case.

5. The circumstances of the case and the contents of the amended and supplemental answer are such that the court in its discretion should not permit the filing of such pleading at this late date.

Prior to the Chandler Act, the limitation statute applied only to causes of action existing before bankruptcy but did not apply to a cause of action arising after bankruptcy, in the course of administration. This was decided in Stanolind Oil Co. v. Logan, 5 Cir., 92 F.2d 28, certiorari denied 302 U.S. 763, 58 S.Ct. 409, 82 L.Ed. 592.

It is obvious that the limitation provided by the Chandler Act relates only to suits "against a person who has acted as a receiver or trustee of a bankrupt estate." This is a suit by a surety company against a third party.

Rule 15(d) Federal Rules of Civil Procedure, relating to supplemental pleadings, provides that "Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit him to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." Plaintiff urges that this court held for the defendant upon the theory that West Virginia law was controlling, whereas, upon appeal, it is said that the court of appeals held that the case "involved a question of federal law under the provisions of the Bankruptcy Act, rather than a local law," and applying such law, found for the plaintiff. Defendant contends that these facts constitute transactions, occurrences and events which happened since the date of the filing of its original answer, which entitles it to assert a new defense made applicable by the surprise experienced in the decision of the court of appeals. I can see no merit in this reasoning, which, if followed to its logical conclusion, would permit many cases to be tried by piecemeal without any justification therefor. The opinion of the Court of Appeals makes it clear that while the federal law is applicable, its conclusions are not in conflict with the West Virginia cases cited.

This case has been delayed too long and it is now time to enter a final order therein. Judgment may be entered for plaintiff for the sum of $4,050, with interest thereon from April 26, 1938, the date of payment by the surety company.